# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:   **'19 - CV - 02304**

ETHAN WEST-HELMLE

Plaintiff,

v.

DENVER DISTRICT ATTORNEYS OFFICE
DENVER COUNTY JUDICIARY
UNIVERSITY OF DENVER
DUSTIN HEARD
CHRISTINE WASHBURN
JESSIE DUBOIS
MELISSA TROLLINGER ANNIS
THOMAS RUSSELL
VIVA MOFFAT
ALEXI FREEMAN

Defendants.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff, Ethan West-Helmle, pro se, hereby alleges the following:

## JURISDICTION AND VENUE

1.      Jurisdiction of Plaintiff's federal law claims are founded upon 28 U.S.C. § 1331 (federal questions jurisdiction), 28 U.S.C. § 1343 (a)(3) (federal civil rights jurisdiction), and 28 U.S.C. § 1983.

2.      The discriminatory acts alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3.      Plaintiff ETHAN WEST-HELMLE (PLAINTIFF) is an individual residing in Hennepin County, Minnesota.

1

4.       Defendant DENVER DISTRICT ATTORNEY'S OFFICE (DDA) has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

5.       Defendant DENVER COUNTY JUDICIARY (DCJ) has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

6.       Defendant UNIVERSITY OF DENVER (DU), a Colorado nonprofit corporation, has continuously been doing business affecting commerce in the State of Colorado and the City of Denver, and has continuously had at least 15 employees.

7.       Defendant DU has continuously been engaged in the operation of an institution of higher education and has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

8.       At all relevant times, Defendant DU has employed Defendant THOMAS D RUSSELL (RUSSELL), Defendant VIVA MOFFAT (MOFFAT), and Defendant ALEXI FREEMAN (FREEMAN).

9.       At all relevant times, Defendant DCJ has employed Defendant MELISSA TROLLINGER ANNIS (ANNIS).

10.      At all relevant times, Defendant DDA has employed Defendant CHRISTINE WASHBURN (WASHBURN), Defendant DUSTIN HEARD (HEARD), and Defendant JESSIE DUBOIS (DUBOIS).

11.      The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1-80, are unknown to plaintiff who therefore sues

said defendants by such fictitious names and will ask leave of Court to amend this complaint when the true names and capacities have been ascertained. Plaintiff is informed and believes, and thereon allege on such information and belief, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged which actions or inactions proximately caused plaintiffs' injuries as herein alleged. Plaintiff is uncertain as to the manner of function of said defendants, and plaintiff prays leave to amend this complaint to insert true names, capacities, functions, occupations of said defendants when the same are ascertained.

## **RELEVANT FACTS**

12.      PLAINTIFF began attending DU's Sturm College of Law on May 19, 2015 and was set to graduate December 2017, earning a Juris Doctorate.

13.      On December 31, 2016, PLAINTIFF suffered an ischemic stroke following four days of food poisoning, which caused him to tear his carotid artery.

14.      On information and belief, on December 31, 2016, Dr. David Case saved PLAINTIFF's life as the youngest patient of whom he ever performed emergency surgery; however, extensive brain trauma left PLAINTIFF with impairments from this day forward.

15.      In or about July of 2017, PLAINTIFF spoke to FREEMAN in person, and they discussed his stroke and his unusual, antisocial feeling in his externship while FREEMAN encouraged PLAINTIFF to attempt to overcome those barriers when moving forward to DDA.

16.      On July 14, 2017, PLAINTIFF interviewed with Mollie Shultz (Shultz) and McKenna Burke (Burke) in their office at DDA.

17.     Burke and Shultz were both previous interns/externs with DDA, and they told PLAINTIFF that the majority of the district attorneys in the office previously worked there as interns/externs.

18.     PLAINTIFF told Burke and Shultz he suffered a stroke and if there are any issues, then talk to him about their concerns to find a solution, and both Burke and Shultz agreed, receiving PLAINTIFF well.

19.     On August 14, 2017, all interns/externs met at the office for orientation and found out Shultz and Burke were no longer assigned to supervise interns/externs because they were moving up to the District division to handle felonies.

20.     August 14, 2017, was the day PLAINTIFF met HEARD and Ashley Morgan, and HEARD explained to interns/externs there was no need to check in or out with them, and if they cannot make it on a particular day, just to let fellow interns/externs know in advance to make sure Courtroom 4C is covered.

21.     ANNIS, magistrate for Courtroom 4C, sent emails with complaints, daily at times, about interns/externs to WASHBURN and HEARD, then asked that none of her statements be shared with the interns/externs regardless of their educational status or desire to learn from their mistakes.

22.     On September 4, 2017, DUBOIS worked with plaintiffs in Courtroom 4C for the first time, and PLAINTIFF was the notetaker for the afternoon session.

23.     After the session ended, DUBOIS made fun of PLAINTIFF's typing abilities in front of another intern/extern and two court clerks, but PLAINTIFF withheld his embarrassment because she praised how things went very well on this particular day, saying she does not know why ANNIS is such a "bitch."

24.     In fact, PLAINTIFF has struggled with his typing skill since he suffered a stroke, so PLAINTIFF later informed DUBOIS he only looks at his hands because the square buttons blur together otherwise, and DUBOIS was shocked to find out.

25.     On September 21, 2017, WASHBURN called an impromptu meeting with the interns/externs to inform them that ANNIS inundates her with complaints about interns/externs and encouraged them to tell her their side of "the story."

26.     PLAINTIFF told WASHBURN he did not want to be candid while another intern as well as WASHBURN insisted he speak, so he informed her HEARD was incredibly disrespectful to interns/externs when he wrote a memorandum "fixing" all of intern/extern issues and ANNIS was a defense attorney wearing a robe.

27.     Immediately following WASHBURN's intern/extern meeting, another extern returned to the board room and overheard DUBOIS making fun of the interns/externs to other district attorneys and asked WASHBURN when she was going to fire interns.

28.     Later the same day, DA Jane Doe met with interns/externs to assure them that no intern was going to be fired, explaining that this was policy of the DDA which has always been strictly adhered to.

29.     On information and belief, September 24, 2017, with discriminatory intent, WASHBURN submitted a mid-semester review for PLAINTIFF – an identical "copy and paste" from another intern/extern's review with only the name changed – but the last line of PLAINTIFF's review read: "Ms. Larson will be released to do trials and motions hearings," implying PLAINTIFF would not.

30.     On September 27, 2017, FREEMAN emailed Washburn telling her that she wants a strong relationship with her office to continue.

31.     On September 28, 2017, WASHBURN came to courtroom 4C and had a sidebar conference, off the record, with ANNIS, explaining PLAINTIFF was disabled and dissatisfied.

32.     On information and belief, September, 29, 2017, HEARD came to Courtroom 4C with discriminatory intent and forced a defendant, who responded to her summons, to go to a trial division after she spoke with PLAINTIFF and accepted a plea deal because he convinced her he would dismiss her case as her case was assigned to the trial division where HEARD was in charge.

33.     Later the same day, WASHBURN sent an email to all interns/externs asking if anybody was tired of Courtroom 4C to come see her for a memorandum assignment, and to WASHBURN's dismay, PLAINTIFF went immediately to her office to be met by hostility, accepting the assignment.

34.     On October 2, 2017, PLAINTIFF requested more time to complete the memorandum due to the complexities of the questions presented, and WASHBURN agreed.

35.     On October 2, 2017, PLAINTIFF met with HEARD and Morgan for his mid-semester review, and they held PLAINTIFF back from doing motions hearings; further, HEARD said it was because there was a defendant who came to court and reached a plea deal with PLAINTIFF even though the name of defendant was nowhere on the Department of Motor Vehicles report in her file, which was not a misidentification, rather it was a blatant lie.

36.     On October 2, 2017, all other similarly situated interns/externs were permitted to do motions hearings.

37.     On October 7, 2017, FREEMAN emailed PLAINTIFF checking on "Any improvements" in Denver.

38.     On October 11, 2017, FREEMAN encouraged PLAINTIFF to pursue an externship in Jefferson County, Colorado.

39.     On October 13, 2017, ANNIS told a defendant, on the record, PLAINTIFF knows she views abandoning a vehicle, fleeing by foot, is very de minimis, so PLAINTIFF waited until session ended to inquire why the abandonment of the car of another is de minimis, which sent ANNIS into an outrage.

40.     Immediately following ANNIS's tantrum, but before she left the bench, DUBOIS again made fun of PLAINTIFF's typing abilities for the benefit of the Magistrate, an intern/extern and court clerks.

41.     On October 13, 2017, for the first time in Colorado judicial history, ANNIS barred PLAINTIFF from returning to her courtroom in any official capacity with the District Attorney's Office without due cause, explanation, or a hearing.

42.     Upon information and belief, in or about October, 2017, ANNIS wrote a letter of recommendation for WASHBURN to be appointed to replace a judge.

43.     On October 15, 2017, DA Brittany, abruptly rushed to the elevator, causing a scene in the lobby while interns/externs were going to court when DA Jane Doe publicly scolded her.

44.        On information and belief, DA Brittany held PLAINTIFF back even though it was the docket day which he prepared the plea deals, and immediately afterward, DA Jane Doe told DA Brittany to apologize to PLAINTIFF, so she did.

45.        On October 16, 2017, DUBOIS promised PLAINTIFF she would serve as a recommendation to Arapahoe County, and told PLAINTIFF to put her as a reference in his cover letter.

46.        On October 18, 2017, PLAINTIFF sent an inquiry to Brian Sugioka, Arapahoe County Court Chief, and added DUBOIS to his cover letter.

47.        On information and belief, October 19, 2017, DUBOIS spoke with Brian Sugioka, telling him about PLAINTIFF's disability and recommended Mr. Sugioka not hire him.

48.        At all relevant times, DUBOIS shared an office with HEARD, and he was present on this day, in their office, listening to the conversation DUBOIS had with Brian Sugioka, dishonoring the promise she made to a disabled person who relied on her word.

49.        Shortly thereafter, on October 19, 2017, HEARD informed PLAINTIFF he was "barred, banned from the courtroom," while he was not permitted to share ANNIS's complaints with PLAINTIFF, what he could say is ANNIS declared, "This is my COURT, MY ROOM, MYYYYY RULES!!"

50.        HEARD raised the bar of scrutiny, regarding PLAINTIFF, and blamed him for issues he and ANNIS had with other interns.

51.        HEARD did not have time to consider possible accommodations even though he knew ANNIS barred PLAINTIFF from her courtroom for 6 days prior to

delivering this devastating news, and told PLAINTIFF he could continue to prepare Tuesday's docket, and he must complete the memorandum for WASHBURN.

52.     On October 19, 2017, after HEARD broke the news regarding ANNIS, PLAINTIFF returned to his desk, and had received an email from Brian Sugioka, who inspired him to continue prosecution because, "it certainly appears [PLAINTIFF] ha[s] an interest in criminal prosecution and [he] would encourage [PLAINTIFF] to continue to pursue that interest."

53.     On October 22, 2017, PLAINTIFF submitted to WASHBURN the completed memorandum she previously assigned to him, but she never took notice he submitted it earlier than expected.

54.     On October 24, 2017, PLAINTIFF went to WASHBURN's office to return the book of traffic rules he borrowed, and WASHBURN informed him she did not have an opportunity to review the 8-page memorandum he wrote.

55.     Later, on October 24, 2017, PLAINTIFF went to DUBOIS and HEARDs' office in order to request that she order HALO camera footage for a case where a police officer hit a young man with his patrol vehicle while leaving the police station, causing serious bodily injury, and DUBOIS, with HEARD present, told PLAINTIFF if he does not give police great deference, then he just is not right for their office.

56.     The morning of October 26, 2017, PLAINTIFF arrived to work to notice two (2) unprofessional, hurtful comments HEARD wrote on Tuesday's docket for the following week, while there were no other comments, neither positive nor negative.

57.     Moments later, HEARD called PLAINTIFF into Ashley Morgan's office, and Ashley Morgan was disappointed that PLAINTIFF did not take on additional work

given all of the adversity he faced, while HEARD fired PLAINTIFF, citing seven (7)

separate issues with the following Tuesday's docket which was a blatant lie.

58.    In addition, HEARD said he could not believe how slow PLAINTIFF was

because HEARD can do an entire docket day in 1 hour, so PLAINTIFF was no longer

necessary because PLAINTIFF was "just not right for his office."

59.    PLAINTIFF asked if HEARD and Ashley Morgan intended to recommend

a failing grade for him, and HEARD and Ashley Morgan agreed they saw no reason to

take things any further.

60.    In the afternoon, October, 26, 2017, FREEMAN emailed PLAINTIFF,

saying she does not "anticipate them 'firing you' as they know the parameters of the

externship and they were pleased to provide some writing assignments after the

magistrate situation" even though there were not any writing projects assigned to

PLAINTIFF after the 13th of October.

61.    On October 29, 2017, FREEMAN encouraged PLAINTIFF to reach out to

Colorado Springs District Attorneys or a city attorney's office.

62.    Upon information and belief, WASHBURN and/or HEARD mailed/emailed

a letter to all district attorneys in the area, surrounding Denver, in order to deter

PLAINTIFF from achieving a similar position in a different county.

63.    On information and belief, FREEMAN reached out to MOFFAT, her

supervisor, explaining the occurrences at DDA, and MOFFAT, with discriminatory intent,

insisted she document all of their complaints in hope of hurting PLAINTIFF.

64.    On November,15, 2017, FREEMAN emailed HEARD, inducing him to

send his documentation "maybe in the eval if nothing else."

65.     On November 30, 2017, PLAINTIFF emailed FREEMAN requesting a special accommodation in the form of a deadline extension due to a death in the family of a perspective supervising attorney in Colorado Springs, but the inquiry went unanswered.

66.     On December 2, 2017, with the intent to adversely affect PLAINTIFF's professional reputation, HEARD submitted a final review for PLAINTIFF recommending a failing grade based on four (4) major, material lies amongst an overall misrepresentation of PLAINTIFF's performance.

67.     On December 18, 2017, PLAINTIFF met with MOFFAT, and MOFFAT told him there was "nothing she can do" for PLAINTIFF's costs of the externship credit even though she worked with the Chancellor's office for anther student, Karla Soto, in order to cover her costs for a Property class when she claimed discrimination.

68.     On December 21, 2017, PLAINTIFF emailed FREEMAN and Diane Steele, attempting to persuade them not to fail him, rather to accommodate him, despite HEARD's recommendation.

69.     On December 22, 2017, FREEMAN emailed PLAINTIFF asking him to complete two unfinished assignments "in order to put [himself] in the best position to pass" even though she knew she was going to fail PLAINTIFF on November 15, 2017.

70.     On information and belief, FREEMAN sent the assignments to MOFFAT because MOFFAT wanted the assignments in order to adversely affect PLAINTIFF's position to pass on appeal.

71.     In December, 2017, MOFFAT and FREEMAN believed that failing PLAINTIFF would affect his GPA and affirmed this information with the Registrar, who

refused to consider a "not pass," adding it detrimentally to his transcript, even though the externship handbook directly opposed this affirmation.

72.    On January 6, 2017, FREEMAN imposed PLAINTIFF's "failing grade," saying she was "unable to pass" PLAINTIFF in order to maintain a positive relationship with the district attorneys, hoping to place other traditional students with their office.

73.    In addition, FREEMAN emailed PLAINTIFF, saying "I don't think it makes sense to go through the various people's points" even though FREEMAN had duties to PLAINTIFF as her subordinate student in the learning process.

74.    On January 7, 2017, PLAINTIFF fell ill, suffering pain in his right leg.

75.    On or about mid-January, PLAINTIFF suffered a double pulmonary embolism, and was hospitalized for his inability to breathe properly.

76.    Upon information and belief, FREEMAN's sole professional responsibility is to monitor students, grading them for their experience out in the field, but MOFFAT, with discriminatory intent, imposed pressure at DU to internally control her ability to perform professionally.

77.    PLAINTIFF appealed the cost of his externship (6 credits) with DU's Chancellor's Office, but MOFFAT influenced their decision to reject his appeal without consideration.

78.    PLAINTIFF appealed his failing grade within the law school administration, and RUSSELL, the chairperson of the Examinations, Standing, and Readmission Committee, took an extravagant amount of time to offer a decision because the consensus of the committee was not unanimous.

79. Upon information and belief, on or about May 11, 2018, MOFFAT orchestrated with RUSSELL to ask PLAINTIFF nine (9) questions that were intended to harm PLAINTIFF, guised by directly affecting his position to pass.

80. On May 18, 2018, RUSSELL upheld FREEMAN's failing grade because he gives great deference to FREEMAN who told him that PLAINTIFF would get everybody into trouble if RUSSELL stepped in and passed him.

81. On information and belief, MOFFAT directed FREEMAN and RUSSELLs' discriminatory misconduct in order to sabotage PLAINTIFF's ability to seek justice.

82. PLAINTIFF was delayed graduating a full year past his original goal and earned his diploma in December 2018 after registering for eight (8) credit hours to replace the six (6) credits he originally bargained for in exchange for his time working at DDA.

83. In or about June, 2018, PLAINTIFF attempted to leave Colorado and move to Oregon to complete his education in an internship in Multnomah County because FREEMAN said she could not honor another externship with PLAINTIFF out-of-state, even though she has had numerous students doing externships out-of-state.

84. On information and belief, the hiring district attorney in Multnomah County contacted DDA for a reference and was met with defamation contrived to deter her from working with PLAINTIFF.

85. On information and belief, in or about March 2019, after making contact with Multnomah County, WASHBURN and/or HEARD blacklisted PLAINTIFF, alerting others of HEARD's fabrications on his government background check, which prompted Bernalillo County to contact DDA when PLAINTIFF interviewed in New Mexico.

86.     PLAINTIFF was not offered a professional position in Bernalillo County.

**CLAIMS FOR RELIEF**

**First Cause of Action**

**(ADA – Disability Discrimination and Hostile Work Environment)**
**Against DDA, DCJ, DU, and DOES 1-10**

87.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

88.     PLAINTIFF had various limitations and impairment due to the stroke PLAINTIFF suffered on December 31, 2016.

89.     PLAINTIFF established a record of impairment through reporting to his superiors, fellow law students and co-workers at DU and DDA, and as such, PLAINTIFF is protected by the Americans with Disabilities Act as a qualified individual with a disability as defined in 42 U.S.C. §§ 12111 & 12131.

90.     On information and belief, DU, DDA, and DCJ are all public entities as defined in 42 U.S.C. § 12131, which prohibits discrimination by any "public entity," including state and local government, as defined in Section 201.

91.     Pursuant to 42 U.S.C. § 12132, section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

92.     DU, DCJ, and DDA have all failed their responsibilities under Title II to provide its services, programs, and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure educational services are

provided on an equal basis to students with disabilities and free of hostility toward their disability.

93.     DU, DCJ, and DDA have all further failed their responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting PLAINTIFF to a hostile educational experience while working as an extern.

94.     As a result of DU, DCJ, and DDAs' failure to comply with its duty under Title II, PLAINTIFF has suffered special and general damages according to proof.

### Second Cause of Action
### (ADA – Retaliation)
### Against DDA, DCJ, DU, and DOES 11-20

95.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

96.     No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act.

97.     DCJ employee, ANNIS, barred PLAINTIFF from a courtroom after he asked her a reasonable question, which sent her into an immediate tantrum.

98.     DDA defamed PLAINTIFF to Multnomah County because he filed a notice of this litigation, tolling the statute of limitations, with the Attorney General's Office.

99.     DU employed MOFFAT, who acted vengefully toward PLAINTIFF because he aided Lucy Marsh in overcoming an obstacle, falsely manufactured by MOFFAT, indented to adversely affect Ms. Marsh's lawsuit against DU for equality.

100.     As a result of DU, DCJ, and DDAs' failure to comply with its duty under Title II, PLAINTIFF has suffered special and general damages according to proof.

### Third Cause of Action
### (ADA – Failure to Provide a Reasonable Accommodation)
### Against DDA, DCJ, DU, and DOES 21-30

101.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

102.     42 U.S.C. § 12112(b) provides that discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

103.     To determine the appropriate reasonable accommodation it may be necessary for the employer to initiate an informal, interactive process with the employee in need of an accommodation. 29 C.F.R. § 1630.2(o)(3).

104.     PLAINTIFF was disabled during the employment and learning experience with DU, DCJ, and DDA in that he had physical and mental impairments limiting at least two (2) major life activities.

105.     Plaintiff requested accommodations from DU and DDA which pertained to and informed his experience at DCJ.

106.     DU, DDA, and DCJ failed to engage in the interactive process with PLAINTIFF and failed to provide the necessary accommodations for PLAINTIFF's disability.

107.     Instead PLAINTIFF was barred from a DCJ courtroom, fired from DDA and failed by DU – all without any explanation.

108.     As a result of DU, DCJ, and DDAs' failure to comply with their duty to provide reasonable accommodations under Title II, PLAINTIFF has suffered special and general damages according to proof.

### Fourth Cause of Action
### (Violation of Section 504 of the Rehabilitation Act of 1973)
### Against DDA, DCJ, DU, and DOES 31-40

109.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

110.     PLAINTIFF is informed and believes, and on that basis alleges, that DU, DCJ, and DDA are and at all relevant times were all recipients of federal funds, and part of those funds were used in the operations, construction and/or maintenance of the specific public facilities and programs described herein and the activities that take place therein.

111.     By their actions or inactions in denying equal access to educational services and by subjecting PLAINTIFF to a hostile work environment, DU, DCJ, and DDA violated PLAINTIFF's rights under section 504 of the Rehabilitation Act of 1973 and the regulations promulgated thereunder.

112.     As a result of DU, DCJ, and DDAs' failure to comply with its duty under section 504 of the Rehabilitation Act of 1973, PLAINTIFF has suffered special and general damages according to proof.

**Fifth Cause of Action**

**Breach of Contract**

**Against WASHBURN, FREEMAN, MOFFAT, RUSSELL, and DOES 41-50**

113.    PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

114.    A third party who is not a party to an agreement may enforce one or more of the obligations created by said agreement if that third party is intended by the parties to be a direct beneficiary.

115.    WASHBURN signed a click-wrap contract when she registered to become a supervising attorney in order to do business with DU's externship office, agreeing not to discriminate against any student, which reflects the employment contract FREEMAN, MOFFAT and RUSSELL signed, with assent, at the time they were hired at DU.

116.    WASHBURN, FREEMAN, MOFFAT, and RUSSELL all breached this contract when they held PLAINTIFF back from his educational and professional activities and services, treating him unequal to similarly situated students to his detriment.

117.    As a result of WASHBURN, FREEMAN, MOFFAT, and RUSSELLs' breach of contract, where PLAINTIFF was the intended third-party beneficiary, PLAINTIFF has suffered compensatory and exemplary damages according to proof.

**Sixth Cause of Action**

**(Tortious Interference of a Contract)**

**Against FREEMAN, MOFFAT, HEARD, ANNIS, and DOES 51-60**

118.    PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

119.     Tortious interference of a contract requires a showing of intentional and improper interference preventing compliance of an ongoing contract.

120.     On information and belief, with intent to discriminate, MOFFAT explicitly directed FREEMAN to induce HEARD into reminding her of all his challenges with PLAINTIFF in PLAINTIFF's final review, and HEARD recommended PLAINTIFF fail even though he knew the parameters of the externship, submitting the final review under WASHBURN's account.

121.     On information and belief, with intent to discriminate, ANNIS prevented the services PLAINTIFF was entitled, preventing WASHBURN from supplying those benefits to the disabled.

122.     As a result of FREEMAN, MOFFAT, HEARD, and ANNISs' tortious interference of WASHBURN's contract, PLAINTIFF has suffered special and general damages according to proof.

## Seventh Cause of Action
### (Conspiracy)
### Against RUSSELL, FREEMAN, MOFFAT, and DOES 61-70

123.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

124.     In Colorado, civil conspiracy requires 1) two or more persons; 2) an object to be accomplished; 3) have a meeting of the minds on the course of action; and 4) an unlawful overt act.

125.     MOFFAT, former Assistant Dean of Sturm, imposed her power to formulate an agreement with FREEMAN and RUSSELL, to uphold PLAINTIFF's failing grade, on appeal, in order to prevent PLAINTIFF from seeking justice for wrongdoing, in

furtherance of the adverse actions taken against him due to discrimination of his disability.

126.    As a result of MOFFAT, FREEMAN and RUSSELLs' conspiracy, PLAINTIFF has suffered special and general damages according to proof.

## Eighth Cause of Action
## (Violation of Due Process Rights)
## Against ANNIS

127.    PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

128.    The Supreme Court has stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are basic in our system of jurisprudence.

129.    It does not square with due process to bar a student attorney forever from practicing before the court.

130.    ANNIS violated due process when she abused her discretion, excluding PLAINTIFF from Courtroom 4C without any explanation or hearing.

131.    As a result of ANNIS's failure to comply with the due process clause of the Fourteenth Amendment, PLAINTIFF has suffered special and general damages according to proof.

## Ninth Cause of Action
## (Abuse of Process)
## Against HEARD

132.    PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

133.     The essence of abuse of process is the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve.

134.     HEARD had an ulterior purpose when he willfully misused his authority in a legal proceeding in order to withhold PLAINTIFF from moving forward in the ordinary course of his educational experience.

135.     All other similarly situated interns/externs moved forward in the ordinary course of their educational experience regardless of their performance.

136.     As a result of HEARD's abuse of process, PLAINTIFF has suffered special and general damages according to proof.

<strong>Tenth Cause of Action</strong>
<strong>(Professional Defamation of Character)</strong>
<strong>Against HEARD, DUBIOS, WASHBURN and DOES 71-80</strong>

137.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

138.     Under common law, the cause of action for defamation exists to protect against unwarranted verbal or written assaults on a person's professional character.

139.     In detriment to PLAINTIFF's professional reputation, HEARD did not write his "challenges" with PLAINTIFF in his final review; instead, he wrote a plethora of false and defamatory factual assertions – some substantially more material than others.

140.     In detriment to PLAINTIFF's professional reputation, DUBOIS made, either slanderous or libelous, false factual assertions by telephone and/or electronic communication to Arapahoe County Court Chief in order to deter him from hiring PLAINTIFF the following Spring Semester.

141.    In detriment to PLAINTIFF's professional reputation, WASHBURN was slanderous when she supported HEARD's assertions, speaking to FREEMAN and libelous when submitting HEARD's final review to FREEMAN under her account, taking full credit.

142.    As a result of HEARD, DUBOIS, and WASHBURN's defamation of his professional character, PLAINTIFF has suffered special and general damages.

## Eleventh Cause of Action
### (Intentional Infliction of Emotional Distress)
### Against WASHBURN, HEARD, ANNIS, FREEMAN, MOFFAT, and DUBOIS

143.    PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

144.    The conduct of WASHBURN, HEARD, ANNIS, and DUBOIS was extreme and outrageous while their unlawful behavior was cloaked by color of law.

145.    On information and belief, MOFFAT acted with extreme and outrageous conduct when she recklessly, explicitly directed FREEMAN to "Fail" PLAINTIFF.

146.    FREEMAN administered the final blow of extreme and outrageous conduct which sent PLAINTIFF to the hospital in approximately one week's time because PLAINTIFF's blood thickened and clotted due to the immense distress.

147.    As a cumulative result of WASHBURN, HEARD, DUBOIS, ANNIS, MOFFAT and FREEMAN's infliction of emotional distress, with discriminatory purpose, was the direct and proximate cause of the extreme torment PLAINTIFF suffered, which resulted in the double pulmonary embolism that nearly took his life in mid-January 2018, leaving PLAINTIFF on pharmaceutical support for life.

### Twelfth Cause of Action
### (Blacklisting)
### Against HEARD, WASHBURN, and DUBOIS

148.     PLAINTIFF incorporates all allegations in all the preceding paragraphs as being as though fully set forth herein.

149.     For any person to blacklist or publish, or cause to be blacklisted or published, any employee, or laborer, who has been, or would be, discharged from employment for the purpose of preventing employee from securing similar or other employment from another is liable and guilty of a misdemeanor.

150.     On information and belief, HEARD, WASHBURN and DUBOIS each blacklisted PLAINTIFF via electronic and/or telephonic communications with district attorney offices of other counties in order to deter them from working with PLAINTIFF due to his disability.

151.     As a result of HEARD, WASHBURN, and DUBOIS blacklisting him, PLAINTIFF has suffered special and general damages according to proof.

### <u>JURY DEMAND</u>

PLAINTIFF hereby demands this matter be tried by a jury.

### <u>PRAYER</u>

WHEREFORE, PLAINTIFF prays for judgment as follows:

1.     Awarding PLAINTIFF damages as he has sustained as a result of violations of the Americans with Disability Act and Rehabilitation Act, including economic damages for his past and future loss of wages and his noneconomic damages from the discrimination he endured.

2.      Awarding PLAINTIFF punitive damages against each defendant for all claims.

3.      Awarding PLAINTIFF his reasonable attorney fees, costs, court fees, pre-judgment and post-judgment interest, and expert witness fees, as allowed by law, and any other costs and fees allowed by law.

4.      Awarding PLAINTIFF with other and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of August, 2019.

Ethan West-Helmle, pro se
P.O. Box 11566
Minneapolis, MN 55411
Telephone: (310) 467-0468
Email: ethanVdenver@gmail.com

JS 44 (Rev. 06/17)    District of Colorado

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ethan West-Helmle

**DEFENDANTS**

Denver District Attorney's Office, Denver County Judiciary, University of Denver, Dustin Heard, Christine Washburn, Jessie Dubois, Melissa Annis, Thomas Russell, Viva Moffat, Alexi Freeman

**(b)** County of Residence of First Listed Plaintiff    Hennepin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Denver
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1331

Brief description of cause:
A case of discrimination involving a student who suffered a stroke

☐ AP Docket

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
08/02/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE