**Olivia Larson**, LL.B., LL.M. (Cantab)

J.D. Candidate 2018 | University of Denver

olivia.j.larson@icloud.com | (720) 415-9948

---

**From:** Freeman, Alexi <afreeman@law.du.edu>
**Sent:** Monday, October 9, 2017 8:44 PM
**To:** Carpenter, Olivia <ocarpenter18@law.du.edu>
**Subject:** RE: County Court

Olivia-

I apologize that I didn't realize you were there for more than one semester. I do think that helps things (my guess is it was not county court but either way it's helpful!)

There are some jobs that hire pre bar that might fit your interests:

- Denver city attorney fellowship (be on the lookout in march likely for the email about that – that might be what your friend is doing)

- Rural DA fellowship (if you're open to leaving the metro area, this is a great option for you to get your foot in the door with prosecution work and maybe do a year or two rural, and then lateral in to a local office; but you have to be willing to leave metro)

- Colorado attorney general fellowship (they tend to hire former interns, but not exclusively and this is a great office)

- Jeff Co DA

- 18th – both Arapahoe DA and Douglass County DA

It seems like it makes sense for you to leave the Denver office; I have no doubt about that. I thought you had applied to other prosecution offices (Adams, etc.?)

I totally understand that this semester is tough namely because of things not in your control (namely the magistrate and also the intern environment). I am so sorry about that. I just worry that these things could cloud the entire experience (for you and the supervisors). But if I recall, Christine definitely appreciated your work ethic and attitude, which is important.

It does sound like it's been a very exhausting semester and stressful on so many levels. The more open you are to other jobs, the easier it is for me to say forget prosecution this spring, any office, and pursue the clinic, which is a much more controlled environment. But you then have to be open to these other types of jobs just because no DA job is guaranteed of course, especially without any complicating factors.

In terms of navigating the job where you are now and the like: it is clear you are doing more than your share. 2 to 3 weeks isn't so much longer. I do think folks will see and appreciate that you're picking up on what others are not doing and value

that. You will have a much more enjoyable November and December even with exams I'm sure.

Keep your head up!

**Alexi Freeman**

Director of Externships & Public Interest Initiatives

Associate Professor of the Practice, Denver Law

From: Carpenter, Olivia
Sent: Monday, October 9, 2017 8:33 PM
To: Freeman, Alexi <afreeman@law.du.edu>
Subject: Re: County Court

Professor Freeman,

I really think the issue is with the Magistrate. She goes out of her way to find any problem. I talked to her afterwards once and apologized for any issues and let her know we are all trying our best.

The day of the stuff with the PD the Magistrate accused me of withholding information from the PD. (It is always the most drastic conclusion she jumps to). I went and talked to Dustin and he was aggravated about the Magistrate and said she should know better. The DA we were with that day was frustrated and sent Phil (the CU intern) back to the office after that because she said it was easier to start over. So, even though whatever happened had nothing to do with me being right or wrong I left feeling like a moron. Admittedly after talking with Dustin I felt better about the whole thing.

Another issue is that the office wants us to be two weeks ahead with making plea offers in the computer. Lately I have been preparing Monday-Wednesday even though Ethan is suppose to be helping with Monday and doing Tuesday, he has not been keeping up. I sent him a message and asked if he could help more this week and he said sure, but we will have to see if he does. Ashley is aware and offered to help me, I just wish I was able to get ahead in the first place.

Anyhow, the office seems to realize the Magistrate is aggressive. I ran into my boss from the Juvenile unit and she told me she's heard our Magistrate is "bonkers." But, even if they all know this, it does not really do much to help our situation.

I am just becoming exhausted from all these things and the fact that I end up doing a lot of Ethan's work. He even joked that he didn't need to help with Monday because I always do it. I know he has had a rough time there so I don't want to give him any grief, but we're all in a tough spot.

At this point I do want to be a Prosecutor, but I am open minded to other options too. I spoke with someone who just passed the bar and he had been working with the City Attorney's office in Denver and they hired him prior to the results, which is encouraging. As far as I know the DA does not do this. This is my second semester with Denver DA, I'm not sure if that would change your opinion about my prospects after the bar. I am confident my review from my previous Chief would be a positive one.

Thanks again for getting back to me. I appreciate your input.

Olivia

Sent from my iPhone

On Oct 9, 2017, at 7:56 PM, Freeman, Alexi <afreeman@law.du.edu> wrote:

> Hi Olivia-
>
> Thanks for the update. I'm sorry to hear about the issue. It seems there's always something. I've had a hard time trying to connect with Christine. She did respond which was great but we haven't found a time to chat yet.
>
> I think it's fine to finish your hours at the end of their time vs at the end of the semester (provided you've worked at least ten weeks as that is our school's requirements). But I would suggest that you tell them this very soon. If we are talking about two or three weeks, to me now is the time to propose the end date. I would suggest finishing at the end of a week vs in the middle e.g. maybe Nov 3? That's also only a few weeks before the end of the semester anyway.
>
> In terms of next semester: clinics are great! I always recommend students do a clinic for the experience it provides. With that said, my honest response is that if you want to be a prosecutor, more prosecution experience is more likely to help you secure a da position post grad. If this was not your 3L year I would say definitely do the clinic. But you only have one semester of da work and it has not been so smooth (regardless of the reason- magistrate, structure, other interns, being new etc., it's been a tough time). Thus I do think it is more of an uphill battle to secure a position.
>
> With that said, civil lit experience is always great, and clinics are valuable for training and jobs generally. So I think if you choose the clinic it will be a good experience but it is more of a risk for setting yourself up for da employment (though I don't think employment prospects are the only reasons why you choose placements/experiences).
>
> So I'm not sure if this helps, but I hope it provides you with some additional thoughts.
>
> Lexi

Sent from my iPhone- apologies for typos.

On Oct 9, 2017, at 5:19 PM, Carpenter, Olivia <ocarpenter18@law.du.edu> wrote:

Dear Professor Freeman,

Thank you for getting in touch with me. Last week was fine, there were problems with the Magistrate and the PDs forcing us to hand over materials we were using in our arguments that we are not actually obligated to hand over. I talked to Dustin for clarification and he said it is an ongoing problem with the Magistrate/PDs. At least they are aware I wasn't responsible for that "hiccup."

I am 60 hours away from finishing the credits I signed up for. I have not spoken with anyone about an end date, but at the moment I am leaning towards wanting to finish my externship once my hours are complete. The main reason for this is that I would like to be able to focus on school work before exams begin. This week I have a memo due for Admin law and I am beginning to feel some pressure juggling everything.

Is it usual for externs to leave their placement once the credit hours have been fulfilled? At this rate I am a good 2-3 weeks off from that happening. I do feel as though the DA's office would likely keep me on for Spring, but I am attempting to figure out what would be best for me mentally and academically. With the bar results that just came out, it has become apparent to me that July is just around the corner and pacing myself for the stress to come from preparing for that may not be a bad idea.

Another thing I wanted to ask your opinion about is the Civil Litigation Clinic. I have been accepted to participate in that for Spring 2018, and I have been thinking that doing that may be a good idea. It would be nice to do something at school with that type of support as well as learning more about the civil side of litigation. It is my understanding that we are able to represent victims of domestic violence, as well as other matters, and I would definitely be interested in that line of work. Do you think it would be beneficial for my future career prospects to have some experience in both criminal and civil litigation? I noticed that many Deputy DAs interned with a DA's office for a semester, and they managed to be hired. Some even have crossed over from civil litigation firms, so it seems possible to become a DA even after doing something else. With that in mind, maybe I do not have to torture myself with this amount of work for a possibility of being hired as a DA later on. Your thoughts would be greatly appreciated, and no rush because I know you are busy this time of year.

Olivia

> On Oct 7, 2017, at 8:20 PM, Freeman, Alexi <afreeman@law.du.edu> wrote:
>
> Olivia –
>
> How did this week go? Continue to be on the up and up?
>
> *Alexi Freeman*
>
> Director of Externships & Public Interest Initiatives
>
> Associate Professor of the Practice, Denver Law
>
> ---
>
> **From:** Carpenter, Olivia
> **Sent:** Thursday, September 21, 2017 7:07 PM
> **To:** Freeman, Alexi <afreeman@law.du.edu>
> **Subject:** County Court
>
> Hi Professor Freeman,
>
> Thank you for your in depth response to my agenda. I appreciate your input and I am looking forward to our meeting.
>
> I really want to let you know how things are going. I have concerns and have been frustrated and I wanted to express this to you because I know you may be able to help me safely find the right ways to handle what is going on.
>
> Things in Denver have been pretty rough. The interns are working very hard, but a combination of staff movement in our unit and being short staffed with deputies in general has resulted in disjointed training and frustrated supervisors. I don't think it is anyone's fault, but a product of the office going through changes. I believe the interns are receiving some of the blowback from it.
>
> We had a meeting with Christine and our supervisor today. They truly are nice and want to help, and want us to succeed. There isn't a lot we can do about our Magistrate who is tough on us. The consensus is that she is quick to criticize and overreacts to any mistakes that are made. It is almost as though she is out to create chaos and complain to Christine about every little mistake. I just wish she was more accepting that we are interns and though we're trying we simply don't yet know all the nuances a full time DA would know.
>
> I do not really see the internship being more than docket prep for us because the Magistrate was "very happy" with the previous interns and with fewer of us

who spend less time there we can't live up to her expectations. I don't mind doing docket prep and bond the whole time because it is challenging, but it is frustrating that the Magistrate is going out of her way to complain about anything. For instance, I made two mistakes: 1) I mentioned a child sexual assault conviction in open court during bond because I was not aware or told by anyone that she has a rule that we need to approach for that. I truly had no idea. She spent quite some time reprimanding me, and I was mortified and of course apologized and took responsibility and have not repeated the mistake again. During that time she told me that I lost credibility with the court and that I have to be careful with my choice of words because I could be seen as misleading the court. Then, 2) during arguments I mentioned a defendant's "contacts" for domestic violence. He had many. Anyway, the office told us to use them and we just fill the sheet out that we are provided with to prepare for arguments. This was last week, and we have been using contacts (arrests but not convicted) since week one. Just last week she decided she did not like contacts and told us the court will not consider them. I'm not sure how I was suppose to read her mind about that one. She called me up and reprimanded me saying I do not choose my words carefully enough and that my credibility is declining and that she can't trust what I say and will have to double check when I argue. I feel like this is so unfair because over the last six or so weeks I can't think of anything else that was so terrible to prompt such a severe response from her. I've continued to argue and do my best, but it is an uphill battle. I've always apologized and accepted that I am wrong when the issue has come up. I am not the only one receiving this treatment and I have fared a little better than our other intern. One intern is so exasperated that they refuse to argue any bond issues and have basically shut down in court.

In terms of the other interns we are working hard to have a more productive dynamic between us. We have cleared the air and I do not believe the group of us together is what is causing all these problems. The system for us in the unit is disorganized and chaotic and it is hard to cope while having train wreck sessions in court and coming back to the office to hear from our supervisors about everything we have done wrong. No matter what we do things do go wrong in court and often we didn't have control over it. (I won't say that it is never our fault but we do receive the brunt of the blame.)

Today I walked into a meeting room with my supervisor and while I was waiting for her by the door one of the DAs was laughing and asked everyone in the room (probably 12 people) "are the interns fired yet?" One then realized I was in there and they seemed mortified. The person who said it abruptly said "I wasn't talking about you!!" Still, whether I was a party to the joke or not, that is an illustration of the atmosphere we are in every day.

We have a different deputy in charge of our court room every week and often during the week there are fill ins. Each deputy has a different idea of what is right and this is hard while learning a system because there is no consistency. Most of the DAs who supervise in court resent being there because they have other work they aren't able to do. One referred to her supervision of us as "babysitting" and another who has also been a deputy less time than we have been interns actually told an intern today in court to stop asking her so many questions. Some of the DAs are wonderful and helpful but we have that type of supervisor a lot less than the irritated ones. Our main supervisor tells us that we need to be asking questions all the time and then the court supervisor tells us to stop. How are we suppose to do a perfect job in court when we are dealing with this rollercoaster of expectations?

I understand that we're interns and as such are naturally low on the totem pole. It would be nice to have any acknowledgement that we are trying our best. We are not attorneys yet and can hardly know what a practicing DA knows in a matter of weeks. One intern told me they were planning to leave as soon as their credit hours are complete and that the whole thing has drained all their passion.

I am inclined to agree with that intern and I am considering applying to some different county court offices. A friend at Adams tells me that the system is very organized there and geared towards helping the interns learn. Apparently the judges and magistrates for the most part provide feedback and guide the interns in court when they can rather than call them out for a public chewing out. I do not think this friend is embellishing anything and that type of atmosphere sounds more like what I was expecting. (I understand that a trial attorney has to get comfortable dealing with difficult judges, but I never expected to have a Magistrate so venomous, especially with the knowledge that we are trying to learn.) Everybody puts in hrs from 7 am to 7 pm regularly. Effort is not likely the issue here.

If I were to apply to different offices for next semester, do you think it would be confidential? I am worried and would hate to not secure a position elsewhere and have Denver find out that I was "disloyal" and not have me back. I want to be a prosecutor and I will forge ahead in this strange environment if that is what it takes. But, if there is a better fit for me elsewhere I am open to exploring that. I do have a Wheatridge City Attorney's office open interview from earlier in the year, but I love the work the District Attorney's office does and I am reluctant to give that up.

I regret that this email originally intended to ask you about application privacy turned into a novel, but I truly want to figure out how to improve the situation. I am not trying to whine or be petty, I am just at the point after two group meetings today telling us about the problems with us with no mention of trying to address the internal system that I had to leave at 4:00 instead of working on pleas or classes tonight because I didn't want to start sobbing in the middle of the office or at school. I am hopeful that you won't share my message with the office. I do not want to create drama or a scene there.

What can I do? I know there's probably no straightforward answer. If you would rather wait for our meeting in October to talk about this, that is not a problem.

Thank you for allowing me to write this to you. It has been helpful for me just to be able to express these issues.

Olivia

> On Sep 12, 2017, at 9:46 PM, Freeman, Alexi <afreeman@law.du.edu> wrote:
>
> > Oliva –
> >
> > Thanks for submitting your learning agenda. I am sorry for the delay in response.

You've clearly take a lot of time to be thoughtful about your experience and I trust it will absolutely impact how it goes for you. I'm excited about what you're hoping to achieve and think you will make great progress this semester.

Just a few thoughts:

- You talk a lot, understandably, about oral communication. I would also think about body language – where you are physically standing in the courtroom; how you engage with victims/defendants in terms of not just tone but facial reaction, loudness/softness of voice, hand gestures etc. All of this relates to your goals also around cultural competence and engagement with non-lawyers of course. While you can't full learn all the nuances of different people I think you can be conscientious of how you come across both orally and in how you engage. When you ask for feedback, you can ask about this too… and you can observe others' body language and see if it strikes the right balance for you of power, authority, confidence, empathy etc.

- Collaboration is definitely a value as we discussed. I think it is potentially a value you could also bring into your courtroom as it relates to the opposition. If you can try to engage positively with the other side, perhaps this will make a difference for the tone you set. There will also be folks who don't want to lean across the aisle, but there are others who will be receptive to it if you take the first step.

I look forward to talking more in a few weeks.

*Alexi Freeman*

Director of Externships & Public Interest Initiatives

Associate Professor of the Practice

University of Denver Sturm College of Law
2255 E. Evans Ave., Room 365M
Denver, CO 80208

303.871.6788
afreeman@law.du.edu
http://law.du.edu/index.php/legal-externship-program

http://www.law.du.edu/index.php/public-service-portal

<image001.png>    <image002.png>

---

**Ethan West** <ethanwest.helmle@gmail.com>    Fri, Dec 11, 2020 at 3:38 PM

To: Melissa Heinlein <melissa@mnlordlaw.com>

Scroll down to the last email on this chain and check it out. I read it all and I just thought, "poor sweet girl." It breaks my heart to see how this Magistrate just totally destroyed her. I was SO wrapped up in the experience myself that I just failed to see her need to be protected.
[Quoted text hidden]



# Gmail

Ethan West <ethanwest.helmle@gmail.com>

## (More) FW: County Court
2 messages

**Olivia Larson** ⬛⬛⬛⬛⬛⬛⬛⬛ Fri, Dec 11, 2020 at 12:48 PM
To: Ethan West ⬛⬛⬛⬛⬛⬛⬛⬛



OLIVIA J. LARSON | ATTORNEY





This e-mail message and any attachments may contain confidential, legally privileged information intended for the exclusive use of the addressee. They may also contain proprietary information or information that is otherwise protected from disclosure by applicable law including without limitation the attorney-client privilege and the attorney work product doctrine for anyone but the intended recipient. Please do not read, copy, or disseminate the information transmitted unless you are the addressee. If you have received this message in error, please call us (collect) at ⬛⬛⬛⬛ ask to speak with the message sender, and delete the message from your system. Thank you.

**From:** Carpenter, Olivia <ocarpenter18@law.du.edu>
**Sent:** Friday, December 11, 2020 11:17 AM
**To:** Olivia Larson ⬛⬛⬛⬛⬛⬛
**Subject:** Fw: County Court

**Olivia Larson**, LL.B., LL.M. (Cantab)

J.D. Candidate 2018 | University of Denver

olivia.j.larson@icloud.com | (720) 415-9948

---

**From:** Carpenter, Olivia <ocarpenter18@law.du.edu>
**Sent:** Thursday, October 19, 2017 6:03 PM
**To:** Freeman, Alexi <afreeman@law.du.edu>
**Subject:** Re: County Court

I will let him know. I feel bad for him... he has been working very hard. Thanks.

> On Oct 19, 2017, at 5:32 PM, Freeman, Alexi <afreeman@law.du.edu> wrote:
>
> Have him contact me-
>
> Lexi
>
> Sent from my iPhone- apologies for typos.
>
> On Oct 19, 2017, at 4:21 PM, Carpenter, Olivia <ocarpenter18@law.du.edu> wrote:

Professor Freeman,

Something weird just happened at work. For some reason Magistrate Annis has banned Ethan from 4C. He wasn't given a reason. It may not be my place to tell you but he just told me and he seems upset. I think she is out of line.

Sent from my iPhone

On Oct 16, 2017, at 1:23 PM, Freeman, Alexi <afreeman@law.du.edu> wrote:

> Olivia
>
> I am certainly trying to meet still with Christine- I take your feedback and experience super seriously!
>
> And absolutely plan to engage with folks who plan to work there this spring in advance as clearly there's some situations with the judge and structure/training that did not exist before and are troubling to say the least.
>
> Let's hope the 9th works- and either way I would engage by saying I can work till the 9th period and not continue the discussion.
>
> Whew-
>
> Lexi
>
> Sent from my iPhone- apologies for typos.
>
> On Oct 16, 2017, at 10:31 AM, Carpenter, Olivia <ocarpenter18@law.du.edu> wrote:
>
>> Professor Freeman,
>>
>> I offered to come in on my own time from Nov 2 - 20 just to prep docket for them. That really is why they want us to be there. I also offered to be on call after Nov 20 if someone was absent and they needed a body.
>>
>> The office has not compromised with me in any way this semester. I had asked them when they would like me to end for the semester and the response was to send them an email about it which I did. So, no one has let me know their preference at this point about end dates. At this point I almost do not care about the review they give me. I know I have worked hard and I've done my best.
>>
>> I understand as an intern we often do the work that others do not want to do, and that we're expected to work long hours. That's fine. But, what we have had to deal with this semester has been unfair. The upheaval in the office should not have been put on the interns. I have worked at the Court of Appeals and in the DA Juvenile Unit and neither of my experiences have been remotely negative like this.
>>
>> From this particular experience I have learned that ground rules and a clear end date should be set at the beginning. That could be a good piece of advice for future interns. I do think anyone considering working at this office as an intern should be told about what's going on internally. It is not my place to do that, but if you are able to let people know what to expect I think a lot of grief could be avoided. I've spoken to friends working at other offices and their experiences have not been like what we have faced in Denver. One even said the Magistrates give them feedback and help them learn- doesn't that sound nice?
>>
>> Anyhow, if I hear back from them about the end dates and they want to negotiate I will offer Nov 9. If I do not hear back I will end on Nov 2.
>>
>> Thank you for your input and help this semester. I wanted to make sure that you are kept in the loop about what has been going on. If anything maybe this can help future interns with their experience.
>>
>> Olivia
>>
>> Sent from my iPhone
>>
>> On Oct 16, 2017, at 7:31 AM, Freeman, Alexi <afreeman@law.du.edu> wrote:
>>
>>> Hi Olivia-
>>>
>>> I'm sorry this has been such a frustrating and disappointing experience. It is not the common experience for folks in Denver county court so I didn't anticipate these issues for you. But sounds like there are a number of things going on that affected the ability to provide a good experience for students like they typically do.
>>>
>>> It seems to me that this is not the office you want to or should stay on stay on for next semester. So I would not worry about waiting to hear from them about staying. I think you had talked about the clinic anyway given the structure and that sounds like a good path for you. My guess is they are maybe still evaluating both you and future applicants to determine whether they want to ask you to stay. It's been a challenging semester on so many levels as you know and they are probably still working through all of that. It would be nice to have them let you know

earlier, regardless of whether you wanted to stay, but technically spring externship registration isn't until November 20, so they may be wanting to take all that time to figure things out. There's a career fair November 1 and my guess is that they are waiting until after that.

In terms of leaving, it is your call. Most students work until the end of the semester regardless of hours completed, which is likely why they are surprised/bothered. A compromise would be to give them one more week (November 9 or something like that) so it seems like you're hearing them but also staying true to your needs. How does that sound?

Lexi

Sent from my iPhone- apologies for typos.

> On Oct 15, 2017, at 8:57 PM, Carpenter, Olivia <ocarpenter18@law.du.edu> wrote:
>
> Professor Freeman,
>
> I spoke to Dustin about coming up with an end date last week. They were not thrilled about Nov 2. I forwarded them a more flexible idea at their request and I have not heard back, despite asking for them to please let me know asap. When something goes wrong somebody finds the time at all hours to let the interns know how bad we are doing.
>
> This whole thing is frustrating and I have a feeling they are taking advantage of my unpaid, unemployed intern status because they know a bad recommendation would damage my chances of finding my first job here.
>
> I've done nearly 300 hours and our semester is ending soon. I'm not sure what more they want out of me. They sort of alluded to the idea that I shouldn't need a month to get ready for exams. Honestly, that time will go by in a flash. I came up with the flexible schedule to try to assuage any irritation they have but even doing what I proposed would be hard. It seems ridiculous that they are pushing back about me leaving to focus before my exams.
>
> I have asked them repeatedly over the last month to let me know if they would like me to stay for next semester and they always say they will let me know soon. I told them it takes time to plan externships and that I need to know their position so I can plan accordingly. I am unable to get answers out of the office either way. So, they won't commit to keeping me and don't want me to leave either. At this point, I do not want to stay, I am just pointing this out as another example of being unable to get any answers.
>
> Likely they are waiting to get a new crop of poor interns who will go through the same things we have been through. As one other intern put it, "our experience has been a rollercoaster."
>
> What can I do? Ideally I could just exit on Nov 2 but I think if I do leave they will make life difficult. I do not want to risk what I have left of my reputation after this experience. I feel as though they have benefitted from this program a lot more than the interns and they keep pushing for more. They don't have enough DAs to do the work we are doing if everyone leaves and I'm sure they're cognizant of that.
>
> Olivia
>
>> On Oct 9, 2017, at 8:44 PM, Freeman, Alexi <afreeman@law.du.edu> wrote:
>>
>> Olivia-
>>
>> I apologize that I didn't realize you were there for more than one semester. I do think that helps things (my guess is it was not county court but either way it's helpful!)
>>
>> There are some jobs that hire pre bar that might fit your interests:
>>
>> - Denver city attorney fellowship (be on the lookout in march likely for the email about that – that might be what your friend is doing)

- Rural DA fellowship (if you're open to leaving the metro area, this is a great option for you to get your foot in the door with prosecution work and maybe do a year or two rural, and then lateral in to a local office; but you have to be willing to leave metro)

- Colorado attorney general fellowship (they tend to hire former interns, but not exclusively and this is a great office)

- Jeff Co DA

- 18th – both Arapahoe DA and Douglass County DA

It seems like it makes sense for you to leave the Denver office; I have no doubt about that. I thought you had applied to other prosecution offices (Adams, etc.?)

I totally understand that this semester is tough namely because of things not in your control (namely the magistrate and also the intern environment). I am so sorry about that. I just worry that these things could cloud the entire experience (for you and the supervisors). But if I recall, Christine definitely appreciated your work ethic and attitude, which is important.

It does sound like it's been a very exhausting semester and stressful on so many levels. The more open you are to other jobs, the easier it is for me to say forget prosecution this spring, any office, and pursue the clinic, which is a much more controlled environment. But you then have to be open to these other types of jobs just because no DA job is guaranteed of course, especially without any complicating factors.

In terms of navigating the job where you are now and the like: it is clear you are doing more than your share. 2 to 3 weeks isn't so much longer. I do think folks will see and appreciate that you're picking up on what others are not doing and value that. You will have a much more enjoyable November and December even with exams I'm sure.

Keep your head up!

*Alexi Freeman*

Director of Externships & Public Interest Initiatives

Associate Professor of the Practice, Denver Law

---

**Ethan West** <ethanwest.helmle@gmail.com>    Fri, Dec 11, 2020 at 3:53 PM
To: Melissa Heinlein <melissa@mnlordlaw.com>

[Quoted text hidden]

J.D. Candidate 2018 | University of Denver

olivia.j.larson@icloud.com | (720) 415-9948

---

**From:** Olivia Larson <Olivia.Larson@denverda.org>
**Sent:** Monday, October 30, 2017 1:04 PM
**To:** olivia.j.larson@icloud.com <olivia.j.larson@icloud.com>
**Subject:** FW: 4C docket for monday

---

**From:** Ashley D. Morgan
**Sent:** Sunday, October 29, 2017 6:44 AM
**To:** Olivia Larson
**Cc:** Dustin R. Heard
**Subject:** RE: 4C docket for monday

Olivia:

We need to have a discussion about your offers. At this point, we are looking for nearly perfect offers and the number of errors pointed out below is worrisome. My understanding is that you also put an offer on a DUI where we were waiting for blood results and they had not yet come in.

Please prioritize putting on perfect offers for your next Monday. Dustin and I are going to check them ourselves. As always, if you have questions, ask them.

Thank you,

[Description: Description: Description: cid:image001.png@01D22EF9.4CADF910]

Ashley Daly Morgan | Deputy District Attorney
Denver District Attorney's Office
201 West Colfax Avenue Dept. 801 | Denver, Colorado 80202
Work: 720-913-9554 | Fax: 720-913-9035
ashley.morgan@denverda.org<mailto:ashley.morgan@denverda.org>

---

2 attachments


image002.png
18K


image003.png
33K