**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Raymond P. Moore**

Civil Action No. 19-cv-02304-RM-STV

ETHAN WEST-HELMLE,

      Plaintiff,

v.

UNIVERSITY OF DENVER,

      Defendant.

---

## ORDER

---

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 358), seeking dismissal of Plaintiff's retaliation claim under Section 504 of the Rehabilitation Act. The Motion has been fully briefed (ECF Nos. 368, 374, 378) and is granted for the reasons below. This Order also resolves the three other matters pending in this case: Defendant's Motion for Sanctions (ECF No. 286), Plaintiff's latest Motion for Reconsideration (ECF No. 381), and Plaintiff's Objections to the Court's July 3, 2024, Minute Order (ECF No. 382).

## I.   BACKGROUND

This lawsuit arises out of Plaintiff's academic externship with the Denver District Attorney's Office ("DA's Office") while he was a law student at the University of Denver Sturm College of Law. Plaintiff applied for the Fall 2017 externship through a diversity externship program, disclosing that he was a member of the LGBTQ community. (*Id.* at ¶¶ 12, 13.) Prior to the externship, in December 2016, Plaintiff had a stroke. (*Id.* at ¶ 5.) At some point, he

informed his faculty externship supervisor, Professor Alexi Freeman, that he had had a stroke.

(*Id.* at ¶¶ 5, 9, 10.)

Defendant's externship policies direct students with disabilities or medical issues

protected under the Americans with Disabilities Act ("ADA") and Section 504 of the

Rehabilitation Act who need to request accommodations to visit its Disability Services Program

("DSP").  (ECF No. 372-1, ¶ 16.)  The policies further provide, in pertinent part, as follows:

> If you encounter any challenges as it relates to a disability/medical issue at your placement, please note that the placement may not have the same requirements as Denver Law regarding accommodations.  However, please contact the externship office to discuss. . . .
>
> [T]he University will not tolerate unlawful discrimination or harassment of any kind.

(*Id.*)  Shortly after beginning law school in 2015, Plaintiff requested disability-related

accommodations in connection with his attention deficit hyperactivity disorder and was approved

for fifty percent additional time on his exams.  (*Id.* at ¶¶ 2, 3.)  In addition, after the externship

had ended, Plaintiff contacted the DSP and was granted an accommodation of double time on his

exams due to his stroke.  (*Id.* at ¶ 52.)

As described in previous Orders and Recommendations, Plaintiff's externship at the

DA's Office did not go well.  (*See* ECF Nos. 84, 90, 131, 139.)  Plaintiff's September 2017, mid-

semester evaluation from the DA's Office states, in part, as follows:

> [Plaintiff] has an issue with both his attention to detail as well as implementing proper procedures in Denver Courtrooms. . . .  The primary concern is that he is displaying a poor attitude when confronted with the issues in his work product, and he tends to blame others for the errors or issues he is responsible for.  He is defensive with regard to restrictions being placed on him meant to reduce the errors and inconsistency of his work. . . .

> [H]e needs to stop blaming the court or others for the issues and challenges he is
> facing and handle the matter himself.

(ECF No. 372-1, ¶ 19.)  In addition, Plaintiff's externship supervisor at the DA's Office received

negative feedback from a magistrate judge about Plaintiff and other externs in Courtroom 4C

(which the supervisor relayed to Plaintiff), and he was subsequently barred from that courtroom.

(*Id.* at ¶¶ 23, 25.)  In October 2017, Plaintiff was informed that he was being fired from the DA's

Office.  (*Id.* at ¶ 26.)  Afterward, despite requests from the DA's Office that he return his security

card, he refused to do so.  (*Id.* at ¶¶ 32-34.)

Plaintiff's final evaluation from the DA's Office recommended that he receive a failing

grade, stating that "the greatest problem which led to this decision was [Plaintiff's] lack of

judgment in executing his duties and responding to criticism or challenge," and citing, inter alia,

his "overall negative attitude and refusal to take responsibility for his own mistakes."  (*Id.* at

¶ 38.)  After considering the evaluation, other feedback she received from the DA's Office, and a

memorandum from Plaintiff regarding his grade, Professor Freeman assigned Plaintiff a failing

grade for the externship.  (*Id.* at ¶¶ 46-48.)  Plaintiff's attempt to appeal his grade with Defendant

was unsuccessful.  (*Id.* at ¶¶ 53, 70.)  He graduated at the end of the Fall 2018 term.  (*Id.* at ¶ 75.)

In August 2019, Plaintiff filed this pro se lawsuit, asserting numerous claims against

multiple entities and individuals associated with his externship.[1]  (ECF No. 1.)  After nearly five

---

[1] Because Plaintiff proceeds pro se, the Court liberally construes his pleadings.
*See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But a pro se plaintiff must follow the same
rules of procedure that govern other litigants, and the Court does not supply additional factual
allegations to round out a complaint or construct legal theories on his behalf.  *Smith v. United
States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  The Court may excuse a pro se plaintiff's failure
to cite proper legal authority, confusion about various legal theories, poor syntax and sentence
construction, or unfamiliarity with pleading requirements, but it does not act as his advocate.
*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

years of litigation, his retaliation claim against Defendant is his only remaining claim.

## II.     SUMMARY JUDGMENT

### A.     Legal Standard

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019).  If the

moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of his claim, the burden shifts to him to set forth specific facts showing that there is a genuine issue for trial. *See id.* If he fails to make a showing sufficient to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

### B. Procedural History

Before filing its Motion for Summary Judgment on May 3, 2024 (ECF No. 358), Defendant filed an "Unopposed Motion for Leave to Exceed Page Limit" (ECF No. 355), seeking leave to exceed by three pages the twenty-page limit on such motions. *See* Civ. Practice Standard IV.C.2.c.1. The Court granted the request, and Defendant filed its twenty-three-page Motion for Summary Judgment on May 3, 2024. (ECF No. 358.) Pursuant to the Court's Civil Practice Standards, it also filed a Statement of Undisputed Material Facts (ECF No. 359), identifying each material fact claimed to be undisputed along with citations to the evidence supporting such facts.

On May 20, four days before his Response was due, Plaintiff filed a "Motion for Leave to Exceed Page Limit and Postpone the Due Date for Response to Summary Judgment," seeking to postpone the due date for his Response by four days and to "allow Plaintiff to File a response of 28 pages total." (ECF No. 362 at 1; *see id.* at 2 (reiterating that "Plaintiff asks this Court to allow him to extend the page number to twenty-eight (28)").) The Court granted Plaintiff's Motion the following day. (ECF No. 356.)

On May 28, Plaintiff filed two substantially identical, fifty-six-page Responses (ECF Nos. 367, 368), while failing to file a separate statement of undisputed material facts. *See* Civ.

Practice Standard IV.C.2.d.2.  The following day, Plaintiff filed a "Notice of Late Filing and Motion for Extension," stating that he intended to "submit his response to undisputed facts by end of day on Friday" and offering his "apologies."  (ECF No. 369 at 1-2.)  Consistent with its previous Order (ECF No. 356), the Court accepted only the first twenty-eight pages of Plaintiff's last-filed Response and ordered that the remaining pages as well as the duplicative filing be stricken.  (ECF No. 371.)  In the same Order, the Court denied Plaintiff's request for another extension for failure to demonstrate good cause and further ruled that Defendant's Statement of Undisputed Material Facts would be deemed undisputed.  (*Id.*)

Plaintiff then filed Objections to the Court's Order (ECF No. 372), attaching his responses to Defendant's Statement of Undisputed Material Facts (ECF No. 372-1).  The Court construed the filing as a motion for reconsideration and denied it.  (ECF No. 373.)

After Defendant filed its Reply to Plaintiff's Response (ECF No. 374), Plaintiff filed a noncompliant "Surreply" (ECF No. 374) without seeking the Court's leave.  *See* Civ. Practice Standard IV.E.3 ("No surreply or supplemental briefs shall be filed without leave of Court, upon motion filed after conferring with the opposing party or parties.").  The document comprises, for the most part, a repackaging of the second half of his overlong Response.  (*Compare* ECF No. 368 at 41-56 *with* ECF No. 378 at 3-19.)

For purposes of ruling on the Motion for Summary Judgment, the Court need not consider Plaintiff's noncompliant and superfluous filings.  The Court notes, nonetheless, that Plaintiff does not dispute many of the statements in Defendant's Statement of Undisputed Material Facts.  And in any event, the Court finds that even if these filings were considered, the disposition of this case would not be any different.

**C.      Analysis**

The Rehabilitation Act prohibits discrimination by state and local departments and agencies that receive federal financial support.  *See* 29 U.S.C. § 794.  Because it incorporates the standards applied under the ADA, ADA case law is equally applicable to claims brought under the Rehabilitation Act and vice versa.  *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1190 n.13 (10th Cir. 2023).  In the absence of direct evidence of discrimination based on a disability, a plaintiff may state a claim by using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).  To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *See McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).  "Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse action.  If the employer does so, the burden shifts back to the plaintiff to show that the employer's reasons are pretextual."  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802-04; *Michelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1316 (10th Cir. 2006)).

1.      <u>Prima Facie Case</u>

Defendant argues that Plaintiff cannot establish a single element of his prima facie case. (ECF No. 358 at 3.)  The Court agrees.

a.      *Protected Activity*

With respect to the first element, Plaintiff identifies in his Response "the six relevant protected activities" supporting his claim.  (ECF No. 367 at 10.)  The Court considers each of these and finds that none amounts to protected opposition to discrimination.

(1)      September 2017 complaints

Although Plaintiff cites emails and a mid-semester reflection he submitted to Professor Freeman in September 2017, he has identified nothing in them that mentions or even alludes to discrimination.  For example, he cites the following excerpt from his reflection: "One person that is not conversational, kind, or helpful is Dustin Heard.  This is difficult for me to convey to your office because he was so helpful in the first couple of weeks of training; however, not a good person."  (ECF No. 367 at 11.)  Plaintiff fails to explain how expressing this vague and unfavorable assessment of Mr. Heard's demeanor amounts to protected activity.  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful" under the statutory basis for the employee's claim.  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  "[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by [disability] does not constitute protected activity and will not support a retaliation claim."  *Bennett v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243, 1259 (N.D. Okla. 2014) (quotation omitted).

Here, Plaintiff has not shown that Mr. Heard—or anyone else at the DA's Office—was aware of his purported disability, much less that Mr. Heard treated him unfairly or differently than other externs because of his disability.  Plaintiff's expressed belief that he was not being

supported and other complaints about the externship are aptly characterized as a "generalized employment complaints," which are insufficient to support a retaliation claim. *See Hinds*, 523 F.3d at 1202-03.

Nor has Plaintiff shown that he requested any accommodation from Professor Freeman or even identified any specific limitations caused by his stroke. Plaintiff concedes that after discussing his stroke with Professor Freeman in September 2017, he did not speak to her again until her deposition in this case. (ECF. No. 367 at 1; *id.* at 3.) At a minimum, a request for accommodation "must make clear that the employee wants assistance for his or her disability." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016) (quotation omitted). Here, the general complaints about the externship that Plaintiff shared with Professor Freeman, devoid of any request for accommodations, are insufficient to qualify as protected activity or to show that he had a reasonable, good faith belief he was entitled to accommodations. *See id.* at 1187. "[A]n inadequate request for an accommodation—one that does not trigger an employer's duty to provide a reasonable accommodation or participate in the 'interactive process' of finding an appropriate accommodation—can never constitute protected activity." *Id.* at 1188. To the extent Plaintiff suggests Professor Freeman had an obligation to inquire further about whether he needed accommodations (*see* ECF No. 367 at 4), he has cited no authority imposing such an obligation under comparable circumstances. Accordingly, the Court finds Plaintiff has not shown that he engaged in protected activity when he complained about the externship to Professor Freeman in September 2017.

(2)     October 2017 request for a complaint form

Plaintiff also cites as an instance of protected activity an email he sent to Professor

9

Freeman after he was fired by the DA's Office, quoting the following excerpt:

> [I]s there any sort of complaint form that I should fill out in order to properly punish Dustin, Christine, and Ashley in Denver.  I know that I am the first person that has been fired since a guy that gave his badge to a cop when stopped for speeding.  I know Dustin was very excited to be there when I was fired but without good cause.  I am just a student that was accepted to the office through Judge Mix's program for placement of diverse students.

(ECF No. 367 at 15.)  But again, Plaintiff fails to tie this email to his opposition to unlawful discrimination, and it lacks sufficient detail to qualify as protected activity for the purpose of stating a relation claim.  *See Hinds*, 523 F.3d at 1202; *Foster*, 830 F.3d at 1188.

Plaintiff's reliance on a Notice of Claim he filed with the DA's Office is also unavailing because it pertains to his (now dismissed) retaliation claim against the DA's Office.  *See West-Helmle v. Denver District Attorney's Office*, No. 19-cv-02394-RM-STV, 2021 WL 4046398, at *10 (D. Colo. May 3, 2021) (unpublished).  Moreover, it is undisputed that neither Professor Freeman nor anyone else at the University had any knowledge of the Notice.  (ECF No. 372-1, ¶ 58.)  Plaintiff's assertion that the Notice "has the same events in it" as the October 2017 email is not supported by the record—unlike the Notice, the email lacks any assertion that Plaintiff was discriminated against because of his stroke and provides no details about any specific instances of alleged discrimination.  In addition, Plaintiff fails to explain how his passing reference to Judge Mix's program for placement of diverse students or his belief that he was the only disabled extern at the DA's Office demonstrates that he was engaged in protected opposition to discrimination.  Therefore, the Court finds the October 2017 email also does not constitute protected activity that supports Plaintiff's claim.

(3)     Email forwarded to Professor Russell

Plaintiff also appears to argue that he engaged in protected opposition because Professor

Freeman forwarded his October 2017 email to another professor, Thomas Russell.  But the Court has already concluded that the email does not amount to protected activity, and the Court discerns no basis for concluding otherwise simply because Professor Freeman shared it with a colleague.  Plaintiff seems to imply that the email should have prompted Professor Russell to investigate further, but Plaintiff cites no evidence that Professor Russell was aware of his purported disability or any authority for the proposition Professor Russel had any obligation to conduct an investigation on Plaintiff's behalf.  Nor has Plaintiff adduced any evidence that such an investigation would have uncovered any discriminatory or unlawful conduct by the DA's Office.  On the current record, the Court finds Plaintiff's attempt to demonstrate through speculation and innuendo that he engaged in protected opposition to discrimination with Professor Russell is unavailing.

(4)     Email forwarded to Dean Smith

Similarly, Plaintiff appears to argue that he engaged in protected activity because Professor Freeman forwarded his October 2017 email to a dean, Bruce Smith.  But this argument, like the preceding one, is woefully underdeveloped, and Plaintiff cites no evidence in the record suggesting that his email somehow morphed into protected activity once it was sent to Dean Smith.  Nor has he shown that Dean Smith was aware of Plaintiff's purported disability or that Professor Freeman had an obligation "to share Plaintiff's disability" with Dean Smith.  (ECF No. 367 at 20.)  Therefore, the Court also finds there is no evidence Plaintiff engaged in protected opposition with Dean Smith, and the forwarded email does not support his prima facie case.

(5)     December 2017 memorandum to Professor Freeman

Plaintiff contends that he requested accommodations for his disability in a memorandum he sent to Professor Freeman in December 2017, quoting the following excerpt in his Response: "Also, please remember the massive stroke I survived less than 1 year ago.  I persevered to return to Sturm for my summer externship."  (*Id.*)  In the memorandum, Plaintiff also states that "I have ADHD," apparently to explain the amount of time it took for him to prepare an assignment.  (ECF No. 359-23 at 2.)  However, these statements do not demonstrate that Plaintiff thought he needed, or was requesting, any special accommodation.  *See Foster*, 830 F.3d at 1188; *see also Hampton*, 87 F.4th at 1192 (noting that reasonable accommodations enable the employee to perform the essential functions of his job).

More importantly, nothing in the memorandum shows that Plaintiff held an objectively reasonable belief that he was opposing conduct that was unlawful under the Rehabilitation Act or any other statute.  *Cf. Reznik v. inContact, Inc.*, 18 F.4th 1257, 1265 (10th Cir. 2021) (finding the plaintiff's belief that she was opposing unlawful conduct was objectively reasonable under the circumstances, regardless of whether an actual violation occurred).  Rather, the thrust of the memorandum is that Plaintiff disagreed with DA's Office's recommendation that he receive a failing grade.  (*See* ECF No. 359-23 at 1-2.)  The memorandum takes issue with a few of the errors and mistakes cited in the recommendation, while seemingly acknowledging some missteps on Plaintiff's part.  (*See, e.g.*, *id.* at 1 (stating that Plaintiff "did not take responsibility for the chaos which occurred in the courtroom" during a meeting and would "never approach a meeting in this way again"); *id.* at 2 (stating that Plaintiff took "responsibility for unknowingly upsetting [his] intern colleagues").)  However, in the absence of any statements suggesting that Plaintiff

was harassed or discriminated against because of his disability—as opposed to his performance

as an extern—the Court discerns no basis for finding that the memorandum constitutes protected

activity.

Nor does the memorandum describe circumstances in which it was obvious that Plaintiff

needed accommodation because of his disability.  *See Robertson v. Las Animas Cnty. Sheriff's*

*Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007) (noting that a request for accommodation may not

be required when a disabled individual's needs are obvious).  Plaintiff has not shown that any

limitations he had were obvious, and nothing in the memorandum connects his grievances about

the externship to his purported disability.  Indeed, Plaintiff has yet to identify any specific

limitations caused by his stroke or to suggest any specific accommodations that could have been

provided.  Therefore, the Court finds the memorandum did not put Defendant on notice that

Plaintiff needed accommodations because of his purported disability.

Further, by the time the memorandum was sent, Plaintiff had already been barred from

Courtroom 4C and fired by the DA's Office.  Neither the Rehabilitation Act nor the ADA

"require employers to reasonably accommodate an employee's disability by overlooking past

misconduct—irrespective of whether the misconduct resulted from the employee's disability."

*Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017).  Rather, "the requirement to

provide reasonable accommodations . . . is always prospective, and . . . an employer is not

required to excuse past misconduct even if it is the result of the individual's disability.  *Id.*

(quotations omitted); *see also Davila v. Quest Corp., Inc.*, 113 F. App'x 849, 854 (10th Cir.

2004) (unpublished) ("[E]xcusing workplace misconduct to provide a fresh start/second chance

to an employee whose disability could be offered as an after-the-fact excuse is not a required

accommodation under the ADA."); *McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law.").

The Court has already determined that Plaintiff's memorandum does not connect his unsatisfactory performance as an extern with his purported disability. But even if it did, nowhere does Plaintiff identify any changes Defendant could make to the externship program or seek any prospective accommodations. *See Dewitt*, 845 F.3d at 1316 (holding that the ADA does not require an employer to provide retroactive leniency to an employee who offers an after-the-fact excuse for workplace misconduct). Instead, Plaintiff's passing references to his stroke and ADHD coupled with the argument in his Response that Professor Freeman "never took Plaintiff's disability into consideration" (ECF No. 367 at 20) suggest that Plaintiff believes that because of his purported disability, he should have received a pass or been allowed to rewrite his own evaluation. As the authorities cited above make clear, however, the law does not require "retroactive leniency" as a form of accommodation. *Profita*, 709 F. App'x at 921 (citing *Dewitt*, 845 F.3d at 1316). Accordingly, the Court finds Plaintiff's December memorandum cannot be deemed protected activity.

(6)    May 2018 renewed request for accommodation

Finally, Plaintiff contends that he renewed his request for accommodation via statements he made to Professor Russell in May 2018. Specifically, he cites the following:

> As you know, I had a massive stroke 8 months prior to beginning work at the Denver DA's office. My cognitive abilities at this time can be confirmed with my C & C+ on my transcript this semester. I was unable to complete the exams; however, my performance this Spring Semester will be greatly increased. The Denver DA's Office and Magistrate Annis as well as Ms. Freeman knew of my stroke, and I was not afforded any special accommodations by anyone involved in

this matter.

(ECF No. 367 at 23.)  But these statements do not demonstrate that Plaintiff's disability limited his ability to participate in the externship program.  Plaintiff fails to identify any accommodation denied to him by Professor Russell or anyone else.  Absent such a request or further explanation about his limitations caused by his disability, he cannot establish that he engaged in protected opposition merely by telling Professor Freeman that no one else afforded him any accommodations.  Plaintiff cites no authority to the contrary.

Based on the analysis above, the Court finds Plaintiff has failed to establish the first element of his prima facie case that he engaged in protected activity.

b.    *Adverse Action*

With respect to the second element of his prima facie case, Plaintiff's Response identifies eight purported adverse actions that support his claim.  (ECF No. 367 at 24-40.)  A materially adverse action is one that might dissuade a reasonable employee from making or supporting a charge of discrimination.  *See McGowan*, 472 F.3d at 742.  Adverse action generally requires a significant change in employment status or the prospect of losing wages, benefits, or a job.  *Id.* However, "petty slights, minor annoyances, and simple lack of good manners will not deter a reasonable worker from making or supporting a charge of discrimination" and are therefore insufficient.  *Id.* (quotation omitted).  The Court finds the actions cited by Plaintiff are insufficient as a matter of law.

(1)    Professor Freeman failing to intervene after she knew Plaintiff would be fired from the DA's Office;

Presuming Plaintiff's firing from the DA's Office could qualify as an adverse employment action, Plaintiff has adduced no evidence that Professor Freeman had any role in

that decision, that she could have intervened to prevent it, or that she had any obligation to do so. For present purposes, the Court finds that Professor Freeman's failure to intervene on Plaintiff's behalf did not amount to a materially adverse action that supports his retaliation claim. Plaintiff cites no authority to the contrary.

(2)    Professor Freeman dissuading him from filing a complaint against the DA's Office

Plaintiff also cites as an adverse action Professor Freeman's response to his October 2017 email requesting a complaint form. But Professor Freeman merely advised Plaintiff that pursuing punishment against individuals at the DA's Office might not be in Plaintiff's best interest. The Court is not persuaded that receiving such advice would dissuade a reasonable employee from opposing discrimination. It did not deter Plaintiff from pursuing his claims (now dismissed) against the DA's Office. And, on the current record, there is no basis for finding that Professor Freeman's email, sent after Plaintiff had been fired, constituted a significant change in Plaintiff's employment status or otherwise qualifies as an adverse action.

(3)    Professor Freeman contacting the Jefferson County District Attorney's Office in November 2017

Plaintiff also contends that Professor Freeman committed a materially adverse action by contacting the Jefferson County District Attorney's Office to determine whether Plaintiff was being considered for an externship there. (ECF No. 372-1, ¶ 36.) However, evidence in the record supports the inference that by the time the contact occurred, Plaintiff was no longer in consideration for a position. Plaintiff has adduced no evidence to the contrary, and his unsubstantiated suggestion that Professor Freeman defamed him is insufficient to raise a genuine issue of material fact as to whether her contact with the Jefferson County District Attorney's

Office amounts to adverse action.

(4)     Professor Freeman defaming of Plaintiff in a report

Plaintiff also contends that he experienced materially adverse action when Professor Freeman and others reported his "concerning behavior" in a Pioneers Care Report.  (ECF No. 367 at 30.)  But Plaintiff fails to explain how a reasonable employee would have found the report materially adverse or how it affected his employment status.  Notably, the report was made after Plaintiff had already been fired from the DA's Office.  Accordingly, the Court finds these underdeveloped allegations are insufficient support Plaintiff's prima face case.

(5)     Professor Freeman preventing Plaintiff from taking
        advantage of another externship

Although Plaintiff argues that Professor Freeman and others prevented him from taking advantage of another externship in December 2017 (ECF No. 367 at 31-32), he fails to develop the factual basis for this argument.  As discussed above, he has not shown that Professor Freeman's contact with the Jefferson County District Attorney's Office caused him to be denied a position there.  Plaintiff has not shown that he was accepted into any other externship, that excluding him from additional externships was inconsistent with Defendant's policies, or that those policies were not applied equally to other law students.  In short, Plaintiff has adduced no evidence supporting the premise of this argument, much less shown that Defendant engaged in action sufficiently adverse to support a retaliation claim.

(6)     Professor Freeman submitting a failing grade for Plaintiff

Plaintiff next argues that Professor Freeman committed an adverse act by submitting his failing grade for the externship.  (ECF No. 367 at 33-34.)  Plaintiff asserts that the loss of six credits delayed his scheduled graduation from May 2018 until December 2018 and caused him to

incur additional costs, including more than $15,000 in tuition.  However, the Court declines to find a materially adverse *employment* action in this novel context.  Assuming Plaintiff's firing could constitute an adverse action by the DA's Office, the Court is not prepared to conclude Professor Freeman's subsequent decision to submit a failing grade constitutes a distinct adverse action for purposes of stating a retaliation claim under the Rehabilitation Act.

Although neither party has cited any case law directly on point, courts have typically concluded that a negative performance evaluation can amount to an adverse employment action "only when [it] later leads to a materially adverse employment action such as termination or a failure to promote."  *Kincaid v. Unified Sch. Dist. No. 500*, 572 F. Supp. 3d 1081, 1098 (D. Kan. 2021); *see also Winston v. Ross*, 725 F. App'x 659, 666 (10th Cir. 2018) (unpublished) (finding employee's performance evaluation was not a materially adverse action); *but see Busby v. City of Tulsa*, 306 F. Supp. 3d 1305, 1319 (N.D. Okla. 2018) (finding that a negative performance evaluation was a materially adverse action because it was the worst one the plaintiff had received in over thirty years).  Here, although Plaintiff suffered adverse consequences from his failing grade, it did not lead to a materially adverse *employment* action—that is, he had already been fired from the DA's Office, and his employment status did not change as a result of his failing grade.

More fundamentally, the Court finds receiving a failing grade is not akin to experiencing an adverse employment action, and therefore the standards applicable to retaliation claims in the employment context are ill-suited to the academic setting in which this case arises.  Unsurprisingly, Plaintiff has cited no authority for the proposition that a failing grade can amount to an adverse action under similar circumstances, and the Court is aware of none.  Thus,

Plaintiff has not established that the decision to give him a failing grade for his externship was an adverse action that supports his prima facie case.

        (7)     Professor Russell and others upholding Plaintiff's failing grade while failing to mention his disability

Plaintiff makes the closely related argument that Defendant's decision to uphold his failing grade was a materially adverse action that supports his retaliation claim. But again, he has failed to cite any authority finding materially adverse action in analogous circumstances, and the Court declines to do so in this novel context.

        (8)     Dean Smith sending a detrimental recommendation about Plaintiff to the National Conference of Bar Examiners

Finally, Plaintiff contends that Dean Smith's memorandum to the National Conference of Bar Examiners in July 2018 constitutes an adverse action supporting his retaliation claim. But Plaintiff provides no authority or rationale for why this memorandum should be construed as a materially adverse employment action. In the absence of any principled basis for doing so, the Court declines to find an adverse action in this novel context.

        c.    *Causation*

Because Plaintiff has not established the first two elements of his prima facie case, it follows that he cannot establish a causal nexus supporting his claim. Accordingly, the Court finds Plaintiff has not met his burden of establishing any of the elements of his prima facie case.

        2.    <u>Pretext</u>

To survive summary judgment, Plaintiff must point to evidence in the record that Defendant's stated reasons for its actions were not honestly held and were instead a pretext for unlawful retaliation. Ordinarily, a plaintiff may show pretext by pointing to evidence that the

defendant's stated reasons for its actions were false, that the defendant acted contrary to an applicable policy, or that the defendant treated the plaintiff differently from other similarly situated employes who violated rules of comparable seriousness.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).  "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith on those beliefs." *Luster*, 667 F.3d at 1093 (quotation omitted).

Here, Plaintiff's subjective assessment of his own performance does not create a genuine issue as to whether Defendant could not have reasonably believed that his performance as an extern did not warrant a passing grade.  "In determining whether the proffered reason for a decision was pretextual, [courts] examine the facts as they appear *to the person making the decision* not the plaintiff's subjective evaluation of the situation." *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011) (quotation omitted).  Although Plaintiff attempts to characterize his performance in a more positive light than Defendant does, he does not dispute that Professor Freeman received significant negative feedback about his performance from the DA's Office, which included multiple problems with his conduct and attitude, his removal from a courtroom, and his refusal to take responsibility for his actions.  (ECF No. 372-1, ¶ 48.)  For present purposes, the pertinent issue is not whether Defendant correctly assessed every detail about Plaintiff's experience at the DA's Office but whether its concerns about his problematic conduct were genuine and substantiated. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007).  The record supports Defendant's position.  Further, Plaintiff has adduced no evidence upon which a factfinder could conclude that the nondiscriminatory reasons for

Defendant's decisions proffered by Professor Freeman or any other representative of Defendant are unworthy of belief.  Therefore, his retaliation claim fails for the additional reason that he cannot demonstrate pretext.

## IV.    OTHER PENDING MATTERS

### A.    Motion for Sanctions

Defendant seeks monetary sanctions against Plaintiff pursuant to 28 U.S.C.§ 1927 and the Court's inherent authority (ECF No. 286), arguing that Plaintiff has needlessly multiplied these proceedings and engaged in abusive litigation practices.[2]  Plaintiff's Response fails to meaningfully address most of the conduct Defendant cites in support of its Motion.  Based on the examples cited by Defendant and the Court's familiarity with the content and tone of Plaintiff's numerous filings in this case over the course of nearly five years, the Court agrees that a sanction is appropriate.

Although this Circuit has not ruled on the issue of whether sanctions may be imposed against a pro se plaintiff under § 1927, federal courts possess certain inherent powers to manage their own affairs in achieving the orderly and expeditious disposition of cases, which includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).  The Court's inherent authority includes the power to assess attorney fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

---

[2] Defendant's request that the Court dismiss Plaintiff's claim against it as a sanction is moot in light of the Court's ruling that Defendant has prevailed on its Motion for Summary Judgment.

Defendant contends that Plaintiff needlessly multiplied these proceedings by filing groundless motions for recusal and reconsideration (ECF Nos. 271, 277), the latter of which "persisted in advancing arguments that the Court had already rejected" (ECF No. 286 at 5). Plaintiff makes no concerted effort to defend these motions in his Response.  The Court issued two Orders denying the first motion, finding that Plaintiff's allegations seeking recusal of Judge Moore and Magistrate Judge Varholak were baseless and supported only by speculation.  (ECF Nos. 271, 274.)  Nonetheless, Plaintiff then file a renewed motion seeking reconsideration of the same issues.  Although Plaintiff ultimately withdrew the renewed motion (ECF No. 313), that was two months after Defendant had incurred the costs associated with filing its Response (ECF No. 283).  Moreover, Plaintiff subsequently proceeded to file yet another unsubstantiated motion for recusal (ECF No. 376), which the Court rejected (ECF No. 377), followed by yet another Motion for Reconsideration (ECF No. 381), which is addressed below.  Plaintiff's relentless filing of baseless and duplicative motions sets this case apart from the vast majority of civil matters that have come before this Court.

In support of its Motion, Defendant also cites Plaintiff's "inappropriate, bad faith behavior throughout the entirety of this litigation," citing his ad hominem and misogynistic attacks on opposing counsel.  (ECF No. 286 at 11.)  Without restating the offending statements here, the Court notes that Plaintiff has persisted in making inappropriate and disrespectful statements to opposing counsel despite admonishment by the Court.  (*See, e.g.*, ECF No. 284 at 11; ECF No. 286-7 at 1; ECF No. 286-8 at 1.)

In his Response, Plaintiff admits that he "was wrong about crucial, specific facts" while refusing to apologize to Defense counsel or his clients and insisting that he is "utterly

undeterred." (ECF No. 312 at 1, 6.)

The Court finds that Plaintiff's vexatious behavior has not abated despite previous admonishment by this Court and the repeated rejection of his unfounded arguments. As alluded to above, it rises to a level the Court has rarely seen, and it has forced Defendant to incur additional and unnecessary litigation costs. Accordingly, in the interest of offsetting a portion of those costs the Court exercises its inherent power to impose a sanction against Plaintiff in the amount of $5,000.

### B.      Motion for Reconsideration

Plaintiff's most recent Motion for Reconsideration (ECF No. 381) mirrors the tone of many other motions he has filed in this case (*see, e.g.*, ECF Nos. 271, 277, 376) and covers no new legal ground. Indeed, it cites a single, previously cited authority, *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993), for the unremarkable proposition that judges have a continuing duty to recuse if they conclude that sufficient factual grounds exist to cause an objective observer reasonably to question their impartiality. Once more, Plaintiff fails to establish a factual basis requiring Judge Moore's recusal in this matter. The Court stands by its previous rulings on this issue (*see* ECF Nos. 272, 377) and, once more, denies Plaintiff's request.

### C.      Objections

Plaintiff has also filed an Objection to the Court's June 30, 2024, Minute Order (ECF No. 382), which struck a previous filing purporting to object to a previous order denying a previous motion for recusal. Because Plaintiff still fails to present a cogent argument for recusal, the Court overrules the Objection.

## V.      CONCLUSION

Therefore, the Court rules as follows:

(1)      Defendant's Motion for Summary Judgment (ECF No. 358) is GRANTED;

(2)      Defendant's Motion for Sanctions (ECF No. 286) is GRANTED IN PART, and

Plaintiff is ORDERED to pay Defendant a monetary sanction of $5,000; the

Motion is otherwise DENIED AS MOOT;

(3)      Plaintiff's Motion for Reconsideration (ECF No. 381) is DENIED; and

(4)      Plaintiff's Objections (ECF No. 382) are OVERRULED.

The Clerk is directed to ENTER JUDGMENT in Defendant's favor and CLOSE this case.

DATED this 12th day of August, 2024.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge